**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

DR. Z PAIGE L'ERARIO,

                **Plaintiff,**

    v.

CORNELL UNIVERSITY,               **Complaint and Jury Demand**

                **Defendant.**

---

**PRELIMINARY STATEMENT**

1.     This is an action for disability discrimination, retaliation and failure to accommodate pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq., the New York State Human Rights Law, N.Y. Exec. Law §290, et seq. ("NYSHRL") and New York City Human Rights Law § 8-101, et seq. ("NYCHRL").

**PARTIES**

2.     Plaintiff Dr. Z. Paige L'Erario is a resident of New York, New York.

3.     Defendant Cornell University is a private university and federal land grant institution, located in Ithaca, Tomkins County, New York, and is part of the State University of New York pursuant to N.Y. Education Law § 352. Cornell University owns and operates Weill Cornell Medical Center and Weill Cornell Medical College, located at 1300 York Avenue, New York County, New York, NY, an employer of Plaintiff, and shall be referred to herein as "Weill."

4.      At all relevant times, Defendant Weill has continuously been doing business in the State of New York and has continuously employed over fifteen (15) employees.

5.      At all relevant times, Defendant Weill has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

6.      At all relevant times, Defendant Weill has continuously been an employer as that term is defined in N.Y. Exec. Law §292.5.

7.      At all relevant times, Defendant Weill has continuously been a person, employer, and covered entity within the meaning of New York City Human Rights Law § 8-102.

## PROCEDURAL HISTORY

8.      On or about June 4, 2023, Plaintiff Dr. L'Erario filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging discrimination because of disability, retaliation, and failure to provide reasonable accommodations in violation of the Americans with Disabilities Act.

9.      The charge of discrimination is attached hereto as Exhibit 1.

10.     On information and belief, the EEOC provided Defendant Weill with notice of the charge of discrimination.

11.     On July 7, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff.

12.     The Notice of Right to Sue is attached hereto as Exhibit 2.

13.     Plaintiff took all necessary steps to exhaust administrative remedies.

14.     Plaintiff took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action

is based on the Americans with Disabilities Act and pursuant to 28 U.S.C. § 1337 because the action

is based on a federal statute regulating commerce.

16.     This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C.

§ 1367 because the state law claims form part of the same case or controversy as the federal claims.

17.     Venue is proper in the United States District Court for the Southern District of New York

pursuant to 42 U.S.C. 2000e-5(f) because a substantial part of the unlawful employment practices

is alleged to have been committed within the Southern District of New York.

## FACTS

### Employment with Defendant Weill.

18.     Defendant Weill employed Dr. L'Erario on or about July 1, 2015.

19.     Dr. L'Erario is a board-certified vascular neurologist in good standing.

20.     Until Plaintiff's gender transition at work, beginning on or about April 2019, Plaintiff's work

was consistently praised as "excellent."

21.     In July 2016, Dr. L'Erario was named Medical Director of NewYork-Presbyterian's Mobile

Stroke Treatment Unit Program through NewYork-Presbyterian Hospital. Plaintiff was brought

in to set up the program, based on targeted experience and training in the field of stroke treatment.

22.     Plaintiff was on track for promotion to Associate Professor at Weill Cornell Medical

College on July 1, 2021, after the six years at the Assistant Professor level specified in Weill's

faculty handbook.

23.     In 2018, Plaintiff's responsibilities were expanded to include supervision of teams of

neurologists, nurses, paramedics and CT technicians at Columbia University Irving Medical Center in Manhattan, Weill/Cornell Medical Center in Manhattan, NewYork-Presbyterian/Queens, and NewYork-Presbyterian Brooklyn Methodist Hospital.

24.    Arrangements were also made to expand responsibilities to assist in overseeing the implementation of neurocritical care telemedicine services at NewYork-Presbyterian hospitals, including Weill Cornell Medical Center, as well as inpatient and Emergency Room teleneurology services at NewYork-Presbyterian Lower Manhattan Hospital.

25.    Dr. L'Erario was considered a highly valued employee, and earned multiple promotions and salary increases.

26.    Weill's management discussed further promotions with Dr. L'Erario, which management presented as appropriate next career steps career on multiple occasions in 2018 and 2019.

27.    Plaintiff received no negative comments from management and colleagues, and never received any type of discipline, such as oral or written coachings or warnings.

28.    During the period July 2019 to February 2020, Plaintiff complained to Weill about harassment and other discrimination because of gender identity and gender dysphoria.

29.    Weill took no action to address Plaintiff's complaints.

30.    Weill condoned the perpetuation and continuation of a hostile work environment based on sex, gender identity and disability of which it was on actual notice..

31.    As a result of the hostile workplace environment, Dr. L'Erario suffered impairments that substantially limited the ability to work, including substantial limitations on the major life activities of concentrating, thinking, communicating, and working.

32.    Plaintiff notified Weill that this was the reason for the inability to continue work at Weill and requested accommodations to address this.

33.   Plaintiff had a record of such impairments at Weill.

34.   Defendant's supervisor and other colleagues regarded Dr. L'Erario as having such impairments and made written statements to that effect.

35.   Defendant refused to make reasonable accommodations.

36.   As a result of Defendant's refusal, Plaintiff suffered further impairment.

37.   Plaintiff took FMLA and short-term disability leave beginning in September 2019 because the hostile work environment based on gender identity and disability caused impairments that substantially impaired Plaintiff's health and rendered Plaintiff unable to continue work there until effective steps would be taken to end the hostile work environment.

38.   After FMLA and short-term disability leave were exhausted, Plaintiff applied to CIGNA, Defendant's long term disability carrier, for additional leave.

39.   On May 28, 2020, HR Director Jennifer Alberto wrote to Dr. L'Erario, advising that they had received "job-protected leave under the Americans with Disabilities Act" through March 15, 2020.

40.   Ms. Alberto requested recertification of medical documentation by June 1, 2020, in order to receive "additional job-protected leave."

41.   Dr. L'Erario responded by providing the required documentation on or before June 1, 2020.

42.   Plaintiff's doctors certified to Weill's long term disability insurer, CIGNA (later acquired by New York Life, and referred to herein as "New York Life"), that Plaintiff was unable to work.

43.   New York Life accepted these certifications and began providing disability leave benefits.

44.   New York Life required Plaintiff to apply for Social Security Disability Income.

45.   The Social Security Administration approved Social Security Disability Income payments based on Plaintiff's disabilities, which were subrogated to New York Life.

46.   Dr. L'Erario brought an action against Weill in the United States District Court for the Southern District of New York on August 10, 2020, Civil Case No. 1:20-cv-06295-JGK (the "Related Action"), complaining of, *inter alia*, a hostile work environment because of gender identity and disability at Weill. That action is ongoing at the time of this filing.

47.   Dr. L'Erario advised Weill of a desire to return to work with accommodations as soon as Weill had taken steps to address the hostile work environment on several occasions during leave, including the following dates: February 25, 2020; March 30, 2020, December 9, 2020, April 14, 2021 and April 24, 2021.

48.   Dr. L'Erario also requested reinstatement in the Related Action complaint, filed on August 10, 2020.

49.   Defendant's counsel objected to Dr. L'Erario contacting Weill personnel directly about desire for reinstatement or any other issue.

50.   At the Court conference on April 27, 2021, Defendant's counsel demanded that Dr. L'Erario agree not to contact any Weill personnel, and that all requests should be made through counsel. Plaintiff agreed.

51.   These events made it clear to Dr. L'Erario that further requests to have Weill provide accommodations and allow a return to work would be futile.

52.   After one year of disability leave, Weill had taken no prompt and effective action to address the hostile work environment experienced by Dr. L'Erario.

53.    Weill placed Dr. L'Erario on "inactive status" one year after disability leave began.

54.   Around this time, Dr. L'Erario began to pursue similar work opportunities on the advice of counsel that there is an obligation to mitigate the lost wages and benefits stemming from Weill's condonation and maintenance of a hostile work environment.

55.   Dr. L'Erario was unable to obtain a similar position despite reasonable efforts.

56.   By March 2023, Weill still had not taken prompt and effective action to address the hostile work environment.

57.   At that time, however, Dr. L'Erario believed that there were indications that the atmosphere at Weill regarding transgender persons had improved.

58.   Further, Dr. L'Erario's health had improved, and doctors approved return to work based on the improvement in health and the belief that Weill's atmosphere regarding transgender persons had improved.

59.   Weill made no request or demand of Dr. L'Erario for a return to work, nor did it advise of any negative consequences for not returning to work during or after disability leave.

60.   Dr. L'Erario advised Weill on April 25, 2023 of a desired return to work with accommodations.

61.   Discussions began regarding Plaintiff's request over the next few weeks.

62.   On May 10, 2023, Weill advised that it refused to allow Dr. L'Erario to return to work.

63.   On May 16, 2023, Plaintiff provided a physician letter advising of fitness to return to work.

64.   Dr. L'Erario's salary was not being paid, although family health benefits continued.

65.   In addition, Plaintiff lost opportunities for promotion at Weill, which management had discussed with them prior to the leave, and which management presented as appropriate next career steps.

66.   Dr. L'Erario remains an employee of Weill, but without pay or benefits.

67.   On May 25, 2023, Dr. L'Erario received a notice dated May 18, 2023, stating that health benefits for Plaintiff and family were being ended on May 31, 2023 , and that they were COBRA-eligible at that time due to "termination that occurred on 05/31/2023."

68.     Plaintiff moved for a temporary restraining order on preliminary injunction on May 26, 2023, believing that termination of employment was about to occur, and seeking to stop the termination and the COBRA notice from taking effect.

69.     Defendant vigorously opposed the motion, asserting that that Dr. L'Erario had not, in fact, been terminated, and they would remain permanently on "inactive status."

70.     Weill stated it would not return Dr. L'Erario to work for the reason that Dr. L'Erario "abandoned" the job because of being out on disability leave.

71.     Defendant and its managers did not and do not have a sincere and honest belief that Dr. L'Erario "abandoned" the job.

72.     Weill and its managers were aware that Dr. L'Erario did not "abandon" the job, as Weill was aware that Dr. L'Erario was absent from the workplace because of disability leave.

73.     Further evidence that Dr. L'Erario did not "abandon" the job is shown by the requests to Weill to return to work with accommodations on February 25, 2020, March 30, 2020, December 9, 2020, April 14, 2021 and April 24, 2021, the request for reinstatement included in the Related Action complaint of August 10, 2020, and continued pleas for Weill to take action to remove the hostile work environment to allow return to work, which Weill failed and refused to do.

74.     Weill demanded that Dr. L'Erario stop contacting its personnel about return to work or any other matter, and that all communications go through counsel, to which Plaintiff agreed.

75.     At this point, further requests to return were futile, and the failure to make further requests is not indicative of abandonment of the job.

76.     Weill also maintains that it still employs Dr. L'Erario, a position inconsistent with its contention that Dr. L'Erario "abandoned" the job.

77.     Plaintiff moved for a preliminary injunction on June 6, 2023, seeking an order requiring

Defendant to return Plaintiff to work.

78.   Weill also vigorously opposed this motion, stating that Plaintiff could not return to work because of bringing a discrimination action, because of which Plaintiff's supervisor and colleagues were angry at the allegations of discrimination made against them.

79.   This reason is retaliatory, because the supervisor's  and colleagues' anger is based on protected activities taken by Plaintiff.

80.   Weill further stated that Plaintiff could not return to work because it would have to use its resources to accommodate the return.

81.   This reason is discriminatory in itself because it is based on Weill's desire not to accommodate the effects of Dr. L'Erario's disabilities.

82.   Accommodation of Dr. L'Erario's return is not an undue hardship for Weill, which has a publicly reported net worth of approximately $17 billion and annual revenues of approximately $6 billion.

83.   The preliminary injunction was denied on July 28, 2023, because (1) reinstatement could be ordered by the Court at the end of the case, removing the required element of irreparable harm, (2) the concerns raised about Plaintiff's termination were not at issue in that action, and (3) the balance of equities did not tip decidedly in favor of Plaintiff.

**CAUSES OF ACTION**
**COUNT 1**
**Americans with Disabilities Act**
**42 U.S.C. § 12101, et seq.**
**Adverse Action Because of Disability**

84.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

85.    Plaintiff had a physical or mental impairment that caused substantial impairment of major life activities for more than six months, a record of such impairment and was regarded by managers and colleagues as having such an impairment, as detailed above.

86.    With accommodation, Plaintiff is and was qualified to perform services as a board-certified vascular neurologist in good standing.

87.    Defendant refused to provide reasonable accommodations to Plaintiff.

88.    Defendant's refusal to provide reasonable accommodations to Plaintiff caused Plaintiff to suffer an impairment.

89.    The impairment required Plaintiff to take disability leave.

90.    When Plaintiff was again able to work, Plaintiff requested, on April 25, 2023, to return to work with accommodations, and provided a medical letter on May 16, 2023, attesting to fitness to return to duty.

91.    On May 10, 2023, Defendant took an adverse action against Plaintiff, advising that it was refusing Plaintiff's request to return to work with accommodations.

92.    On May 18, 2023, Defendant took an adverse action against Plaintiff, ending the family's health benefits as of May 31, 2023.

93.    Had Plaintiff not been disabled, these adverse actions would not have occurred.

94.    Defendant did not have a legitimate, non-discriminatory reason for taking these adverse actions.

95.    In taking adverse actions against Plaintiff because of disabilities, Defendant has acted with malice or reckless indifference to Plaintiff's protected rights.

96.    As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has incurred damages including but not limited to lost wages and benefits, humiliation, loss of

enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 2**
**New York State Human Rights Law**
**N.Y. Exec L. § 290, et seq. (NYSHRL)**
**Adverse Action Motivated by Disability**

97.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

98.    Plaintiff had a physical, mental, or medical impairment which prevented the exercise of a normal bodily function and was demonstrable by medically accepted clinical or laboratory diagnostic techniques, as detailed above, and a record of such an impairment, and Plaintiff's supervisor and colleagues regarded this as such an impairment.

99.    Upon the provision of reasonable accommodations, the impairment would not prevent Plaintiff from performing in a reasonable manner the activities involved in their occupation as a board-certified vascular neurologist.

100.   Defendant refused to provide reasonable accommodations to Plaintiff.

101.   Defendant's refusal to provide reasonable accommodations to Plaintiff caused Plaintiff to suffer an impairment.

102.   The impairment caused Plaintiff to require disability leave.

103.   When Plaintiff was again able to work, Plaintiff requested, on April 25, 2023, to return to work with accommodations, and provided a medical letter attesting to fitness to return to duty.

104.   On May 10, 2023, Defendant took an adverse action against Plaintiff, advising that it was refusing Plaintiff's request to return to work with accommodations.

105.   On May 18, 2023, Defendant took an adverse action against Plaintiff, terminating the Plaintiff's family's health benefits.

106.  These adverse actions were motivated by Plaintiff's disabilities.

107.  Defendant did not have a legitimate, non-discriminatory reason for taking these adverse actions.

108.  Defendant has acted with malice or reckless indifference to Plaintiff's protected rights.

109.  As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has incurred damages including but not limited to lost wages and benefits, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 3**
**New York City Human Rights Law**
**N.Y.C. Admin. Code § 8-101, et seq. (NYCHRL)**
**Adverse Action Motivated by Disability**

110.  Plaintiff realleges all previous paragraphs as if fully set forth herein.

111.  Plaintiff had a physical, medical, mental, or psychological impairment, as described above, and a history or record of such impairment.

112.  With reasonable accommodations, Plaintiff was qualified for their occupation as a board-certified vascular neurologist.

113.  Plaintiff requested reasonable accommodations of Defendant.

114.  Defendant denied Plaintiff's requests for reasonable accommodations.

115.  Defendant did not engage in a reasonably cooperative dialogue with Plaintiff in good faith regarding the requested accommodations.

116.  Defendant's refusal to provide reasonable accommodations to Plaintiff caused Plaintiff to suffer an impairment.

117.  The impairment caused Plaintiff to require disability leave.

118.  Defendant took adverse actions against Plaintiff motivated by disabilities, including refusing Plaintiff's request to return to work with accommodations and terminating the Plaintiff's family's health benefits.

119.  The effect of the discrimination complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect Plaintiff's status as an employee because of disabilities in violation of the New York City Human Rights Law, as amended.

120.  Defendant acted with malice or reckless disregard for Plaintiff's protected rights.

121.  As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 4**
**Americans with Disabilities Act**
**42 U.S.C. § 12101, et seq.**
**Adverse Action Because of Protected Activities**

122.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

123.  Defendant took adverse actions against Plaintiff because of prior protected activities.

124.  These prior protected activities include, but are not limited to, Plaintiff's complaints and requests to return to work with accommodations, as set forth above in paragraphs 44 and 45, and Plaintiff's request for return to work with accommodations on April 25, 2023.

125.  Defendant was motivated by these prior protected activities to take the adverse actions of refusing Plaintiff's request to return to work with accommodations, and terminating the Plaintiff's family's health benefits.

126.  Plaintiff's exercise of these prior protected activities was known to Weill and its managers prior to their taking these adverse actions.

127.  The actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a complaint of discrimination and from taking protected disability leave.

128.  By engaging in the conduct described above, Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

129.  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.


**COUNT 5**
**New York State Human Rights Law**
**N.Y. Exec L. § 290, et seq. (NYSHRL)**
**Adverse Action Motivated by Protected Activities**

130.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

131.  Defendant took adverse actions against Plaintiff because of prior protected activities.

132.  These prior protected activities include, but are not limited to, Plaintiff's complaints and requests to return to work with accommodations, as set forth above in paragraphs 44 and 45, and Plaintiff's request for return to work with accommodations on April 25, 2023.

133.  Defendant was motivated by these prior protected activities to take the adverse actions of refusing Plaintiff's request to return to work with accommodations, and terminating the Plaintiff's family's health benefits.

134.  The actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a complaint of discrimination and from taking protected disability leave.

135.  Plaintiff's exercise of these prior protected activities was known to Weill and its managers prior to their taking these adverse actions.

136.  Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

137.  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 6**
**New York City Human Rights Law**
**N.Y.C. Admin. Code § 8-101, et seq. (NYCHRL)**
**Adverse Action Motivated by Protected Activities**

138.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

139.  Defendant took adverse actions against Plaintiff because of prior protected activities.

140.  These prior protected activities include, but are not limited to, Plaintiff's complaints and requests to return to work with accommodations, as set forth above in paragraphs 44 and 45, and Plaintiff's request for return to work with accommodations on April 25, 2023.

141.  Defendant was motivated by these prior protected activities to take the adverse actions of refusing Plaintiff's request to return to work with accommodations, and terminating the Plaintiff's family's health benefits.

142.  The actions taken against Plaintiff would dissuade a reasonable employee from making or supporting a complaint of discrimination and from taking protected disability leave.

143.  Plaintiff's exercise of these prior protected activities was known to Weill and its managers prior to their taking these adverse actions.

144.  The effect of Defendant's acts complained of above was to deprive Plaintiff of equal employment opportunities as an employee motivated by prior protected complaints of discrimination and for prior protected disability leave.

145.  Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

146.  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 7**
**Americans with Disabilities Act**
**42 U.S.C. § 12101, et seq.**
**Failure to Accommodate**

147.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

148.  Plaintiff is a person with a disability within the meaning of the ADA, as described above.

149.  Defendant had notice of Plaintiff's disabilities, as described above.

150.  With reasonable accommodation, Plaintiff could perform the essential functions of the job.

151.  Plaintiff requested accommodations of Defendant, as detailed above.

152.  These accommodations were reasonable within the meaning of the ADA.

153.  Defendant refused to engage in an interactive process regarding accommodations.

154.  Defendant refused to make reasonable accommodations.

155.  Defendant's failure to make reasonable accommodations resulted in Plaintiff having a further impairment.

156.  By engaging in the conduct described above, Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

157.  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 8**
**New York State Human Rights Law**
**N.Y. Exec L. § 290, et seq. (NYSHRL)**
**Failure to Accommodate**

158.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

159.  Plaintiff is a person with a disability within the meaning of NYSHRL, as described above.

160.  Defendant had notice of Plaintiff's disabilities, as described above.

161.  With reasonable accommodation, Plaintiff could perform the essential functions of Plaintiff's occupation.

162.  Plaintiff requested accommodations of Defendant, as detailed above.

163.  These accommodations were reasonable within the meaning of the NYSHRL.

164.  Defendant refused to engage in an interactive process regarding accommodations.

165.  Defendant refused to make reasonable accommodations.

166.  Defendant's failure to make reasonable accommodations resulted in Plaintiff having a further impairment.

167.  Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

168.  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 9**
**New York City Human Rights Law**
**N.Y.C. Admin. Code § 8-101, et seq. (NYCHRL)**
**Failure to Accommodate**

169.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

170.  Plaintiff is a person with a disability within the meaning of NYCHRL, as described above.

171.  Defendant had notice of Plaintiff's disabilities, as described above.

172.  With reasonable accommodation, Plaintiff could perform the essential functions of Plaintiff's occupation.

173.  Plaintiff requested accommodations of Defendant, as detailed above.

174.  These accommodations were reasonable within the meaning of the NYCHRL.

175.  Defendant refused to engage in a reasonably cooperative dialogue regarding accommodations.

176.  Defendant refused to make reasonable accommodations.

177.  Defendant's failure to make reasonable accommodations resulted in Plaintiff having a further impairment.

178.  By engaging in the conduct described above, Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

179.  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to professional reputation, and other pecuniary and non-pecuniary losses.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Declare that the acts, practices, and omissions complained of herein are unlawful and violate the ADA, NYSHRL, and NYCHRL.

B.      Permanently enjoin Defendant and all persons in active concert or participation with them from engaging in the unlawful conduct of discriminating against employees motivated by disability or retaliation for prior protected activities, including but not limited to those who take disability leave, and enjoin them from failing to engage in the interactive process or cooperative dialogue when asked for reasonable accommodations;

C.      Order Defendant to institute and carry out policies, practices, programs, and training which provides equal employment opportunities for such employees, and which eradicates the effects of Defendant's past and present unlawful employment practices;

D.      Order Defendant to re-hire Plaintiff with back benefits, retirement contributions etc., and to make Plaintiff whole;

E.      Order other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

F.      Direct Defendant to pay for Plaintiff's past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

G.      Direct Defendant to pay Plaintiff back pay, in an amount to be determined at trial;

H.      Award Plaintiff's attorneys' fees, costs, and disbursements as provided by law;

I.      Direct Defendant to pay Plaintiff punitive damages for malice or reckless

indifference to Plaintiff's protected rights, in an amount to be determined at trial; and

     J.     Award such additional relief as justice may require.

Dated: September 20, 2022

Respectfully submitted,

_____/s Jillian T. Weiss_____
Jillian T. Weiss, Esq. (JW 4542)
Law Office of Jillian T. Weiss, P.C.
242 Main Street #304
(845) 709-3237
Fax (845) 684-0160
jweiss@jtweisslaw.com

*Attorney for the Plaintiff*